[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
In this Motion, defendants Donald DiBianco, an EMT-firefighter, and his municipal employer, the First Fire Taxation District of the City of West Haven ("Fire District"), have argued that they are entitled to summary judgment on three independent grounds: first, that the plaintiff's claims CT Page 9921 against them are barred by General Statutes § 7-308 because the plaintiff failed to present a "demand" to the clerk or corresponding officer of the Fire District at least 30 days prior to commencing this lawsuit; second, that the plaintiff's claims against them are barred by the doctrine of governmental immunity, since defendant DiBianco caused the plaintiff's injuries while negligently performing a discretionary governmental duty; and third, that the plaintiff's claims against them are barred by General Statutes § 52-557b, the "Good Samaritan Law," because defendant DiBianco, a state-certified Level II firefighter and EMT-d who completed a course in first aid through the American Heart Association as part of his certification, allegedly caused her injuries by negligently rendering emergency first aid to her when she was in need thereof. The defendants have supported this Motion with two Memoranda of Law and affidavits from three persons, including himself and two officers or officials of the Fire District:
lieutenant firefighter Timothy Ferrucci and Fire Commissioner Stephen Dargan.
The plaintiff has opposed the Motion with two legal memoranda of her own and affidavits from two eyewitnesses to the collision: defendant Pamela Allen-Warren, the driver of the van that struck the Fire District Ambulance; and Mark Chernyak, another driver who was near the intersection of Church Street South and South Frontage Road when the collision occurred.
The Court heard oral argument on this Motion on June 11, 2002.
 I
The first two arguments presented in this Motion have already been decided adversely to the defendants in the Court's attached Memorandum of Decision, issued on August 2, 2002, denying their virtually identical Motion for Summary Judgment in the companion case of Pamela Allen-Warrenv. First Fire Taxation District, No. (X02) CV-00-0167547. The Court hereby adopts the analysis of that Memorandum of Decision and applies it to the first two grounds of the defendants' Motion. To the extent that the Motion is based upon those grounds, it is therefore DENIED.
 II
As for the third ground presented in this Motion, however, that ground applies uniquely to plaintiff Osborn, who alone among the passengers in the ambulance at the time of the collision was receiving medical treatment. The defendants' claim is that defendant DiBianco, as the driver of the ambulance while such treatment was being rendered, is CT Page 9922 immune from suit under General Statutes § 52-557b, the "Good Samaritan law." Under that statute:
 (b) Any paid or volunteer fireman . . . or ambulance personnel, who has completed a course in first aid offered by the American Red Cross, the American Heart Association, the National Ski Patrol, the Department of Public Health or any director of health, as certified by the agency or director of health offering the course, and who renders emergency first aid to a person in need thereof, shall not be liable to such person assisted for civil damages for any personal injuries which result from acts or omission by such person in rendering the emergency first aid, which may constitute ordinary negligence.
Here, claim the defendants, plaintiff Osborn is seeking damages for personal injuries allegedly resulting from defendant DiBianco's negligent acts or omissions in operating the Fire District ambulance in which she was riding and receiving medical treatment on the morning of October 5, 1999. As a young girl who had just been struck and knocked to the ground by an automobile, she was reasonably feared by responding medical personnel to have suffered internal injuries that required her immediate treatment and transportation to the hospital. Lt. Timothy Ferrucci, the senior Fire District official present at the scene where Ms. Osborn was struck and injured, thus authorized defendant DiBianco to transport her to the hospital in emergency mode, with lights and siren activated. Here, then, claim the defendants, defendant DiBianco, and through him the Fire District, are entitled to "Good Samaritan" immunity because defendant DiBianco's alleged negligence occurred while "rendering emergency first aid to a person in need thereof."
The plaintiff opposes this part of the defendants' Motion on several grounds. Though she acknowledges that defendant DiBianco is indeed a certified EMT-firefighter who has received instruction in first aid from the American Heart Association, she claims that there are genuine issues of material fact as to several important elements of the defendants' Good Samaritan defense. For the following reasons, this Court agrees, and thus DENIES the defendants' Motion on this ground.
Initially, the plaintiff argues, and the Court agrees, that there is a genuine issue of material fact as to whether, at the time of defendant DiBianco's alleged negligence, plaintiff Osborn was a person in need of emergency first aid. Though the defendants have presented ample evidence to suggest that she may in fact have had such a need because of her tender years, her being struck by an automobile, and the realistic CT Page 9923 possibility that she had suffered internal injuries, the plaintiff points to evidence that she was awake, alert and oriented when she was in the ambulance, that her airway was established at all times, and that her vital signs were good. As a result, though she may have needed some form of medical treatment, it is not at all clear that she needed "emergency first aid."
There are no definitions in the statute — indeed in any part of the General Statutes — for the terms "first aid" or "emergency first aid." Hence, the parties have sought to offer dictionary definitions of those terms and definitions from the case law of other states.
Instead of resorting to these secondary sources, however, the Court believes that the true meaning of both terms must be ascertained by examining the curricula of those first aid courses which are specifically recognized in the "Good Samaritan law" as the basic training vehicles for persons who may lawfully seek immunity thereunder. Only if the types of care or treatment or services being rendered to Ms. Osborn at the time of the subject collision were those in which trainees are routinely instructed in such statutorily approved first aid courses can a colorable claim of immunity be asserted under the statute.
Here, however, the Court has been given no such course materials to examine, and thus is hardly in a position to decide that the treatment being rendered to Ms. Osborn at the time of the subject collision constituted "emergency first aid", or that she was then "in need" of emergency first aid.
Even, moreover, if the defendants can successfully establish that at the time of the collision, the plaintiff was in need of emergency first aid, the plaintiff disputes their further contention that defendant DiBianco, as the driver of the ambulance, was personally rendering emergency first aid to her at the time of his alleged negligence. The defendants argue strenuously that the driver of an emergency vehicle transporting an injured person to the hospital is no less important to the successful care and treatment of the injured person than any EMT or paramedic working directly with the patient during transport. To encourage qualified persons to take on such important jobs, they argue, the law must afford them the same immunities from negligence suits that it affords to other members of an ambulance crew.
Though this argument has a certain appeal in logic and public policy, it is not this Court's job to write new laws, but rather to enforce such laws as the legislature has enacted. Here, then, the Court must be guided by the legislature's words, not by its own sense of what might be good CT Page 9924 public policy. Here, as with the above-described dispute as to the true meaning of the terms "first aid" and "emergency first aid", as applied to the needs of plaintiff Osborn and the nature of the services being rendered to her at the time of the collision, there is at least a genuine issue of material fact as to the true meaning of those terms as applied to the driving of ambulances and emergency vehicles in which patients are currently receiving such emergency treatment. It seems doubtful to the Court that the driving of emergency vehicles is actually covered in a basic first aid course of the type a fireman or ambulance worker must complete to invoke "Good Samaritan immunity." Such courses are routinely given to Boy Scouts and Girl Scouts, as well as to young people training as lifeguards, who have not yet reached legal driving age. Still, the Court is prepared to suspend disbelief on that subject and await the presentation of the relevant course materials. In the meantime, however, in the absence of such materials to guide it, the most that can be said in support of the defendants' immunity claim is that, though it may be plausible, it is far from established as a matter of law.
 CONCLUSION
For all of the foregoing reasons, the defendants' motion for summary judgment is hereby DENIED.
IT IS SO ORDERED this 2nd day of August, 2002.
 ___________________, J. MICHAEL R. SHELDON